UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELLA SUN MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00298-RLY-DKL |
| | ) | |
| STOOPS BUICK, INC., and | ) | |
| DEBRA  TRAUNER, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR SANCTIONS AGAINST
DEFENDANTS FOR THE SPOLIATION OF EVIDENCE**

Plaintiff, Ella Sun Martin, is a former employee of Stoops Buick, Inc.  After she

was terminated by her supervisor, Debra Trauner, Plaintiff brought the present

employment discrimination lawsuit against the Defendants, alleging she was terminated

on the basis of her race (Asian), national origin (Chinese), and religion (Buddhism), in

violation of Title VII of the Civil Rights Act of 1964.  Plaintiff now moves for sanctions

against Defendants for spoliation of evidence, alleging that Stoops destroyed evidence

relevant to Plaintiff's case and intentionally withheld disclosure of the destroyed

evidence until after the close of discovery.

On March 23, 2016, the court held an evidentiary hearing and heard the testimony

of key witnesses, including Trauner, Lisa Goodin, members of Stoops' Information

Technology Department ("IT Department"), and Plaintiff's expert, Rhys Kenworthy.

1

Having considered the parties' submissions, the designated evidence, and the testimony

of witnesses at the hearing, the court now **DENIES** Plaintiff's motion.

## I.      Background

On March 23, 2012, Trauner hired Plaintiff for the payroll clerk position on a part-

time basis.  (Filing No. 64-6 at 87, 94).  On January 25, 2013, Trauner called Plaintiff at

home to offer her a full-time position as the payroll clerk.  (*Id*. at 165-66).  Plaintiff

accepted, but stated she had to give her other employer, KinderCare, two-weeks notice,

before she could start.  (*Id*. at 166).  Plaintiff began working full-time on February 11,

2013.  (*Id*. at 166-68).

Near the time that Trauner offered Plaintiff a full-time position, Trauner received a

telephone inquiry from Lisa Goodin, who asked Trauner if there were any open positions

at Stoops.  (Filing No. 64-5 at 8, 24).  Goodin received Trauner's contact information

from Barbara Winegar, who also worked at Stoops.  (*Id*. at 21, 23).  Trauner told Goodin

that Stoops did not have any open positions, but that Goodin was more than welcome to

send in a resume.  (*Id*. at 23-24).  Goodin did so on January 27, 2013.  (*Id*. at 8).

On February 25, 2013, Trauner terminated Plaintiff's employment allegedly

because "she [was] not a good fit for [the] position."  (Plaintiff's Ex. 5; *see also* Tr. [1] at

79 (testifying Plaintiff did not perform satisfactorily)).  Two days later, Trauner hired

---

[1] The transcript from the hearing is cited as "Tr." followed by the page number. The exhibits
admitted into evidence are also cited.

Goodin.  (Tr. at 79; Filing No. 55-31 at 43, 49).  Unlike Plaintiff, Goodin is American-born, Causasian, and Christian.  (Filing No. 55-31 at 43, 49; *see also* Tr. at 84-85).

### A.      Plaintiff's Termination and Procedural History

According to Plaintiff, immediately after she was terminated, she informed General Manager James Myers that she was going to file a discrimination claim against the dealership.  (Filing No. 55-23 at 193-95).  Myers does not recall this conversation.  (Filing No. 64-7 at 60-61).

Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 4, 2013.  (Filing No. 55-19).  Stoops received notice of Plaintiff's Charge from the EEOC on March 7, 2013.  (Filing No. 61-1).  Stoops asked for an extension of time to respond due to "the necessity of conducting a thorough investigation of the factual allegations contained [in the charge] and gathering the necessary information to prepare a suitable response[.]"  (*Id.*).  Stoops, by Trauner, prepared a written response, and Defendants' counsel sent Stoops' Position Statement to the EEOC on May 2, 2013.  (Filing No. 55-22; Filing No. 61-2).

On November 29, 2013, the EEOC issued its Dismissal and Notice of Rights regarding Plaintiff's Charge.  (Filing No. 1-2).  This was mailed to both Plaintiff and the Defendants.  (*Id.*).  Plaintiff timely filed her Complaint against the Defendants on February 27, 2014.  (Filing No. 1).

On September 17, 2015, Defendants filed their Motion for Summary Judgment; the motion was fully briefed as of November 20, 2015.

On December 8, 2015, Plaintiff filed the instant motion for sanctions against the

Defendants for spoliation of evidence.  Plaintiff claims the Defendants destroyed and/or

replaced Plaintiff's work computer, thereby precluding Plaintiff from obtaining evidence

in support of her claims, and that Trauner deleted her e-mail communications with

Goodin that allegedly occurred before January 27, 2013—the day Goodin sent Trauner

her resume.  Plaintiff further claims that the Defendants deliberately misled Plaintiff

during discovery by, *inter alia*, providing false interrogatory answers under oath and

purposely failing to disclose that material evidence was destroyed until after the close of

discovery.

### B.     Plaintiff's Work Computer Files

At the evidentiary hearing, Trauner testified that after she terminated Plaintiff, she

e-mailed the IT Department[2] to request that someone deactivate Plaintiff's passwords and

voicemail.  (Tr. at 19-20; Plaintiff's Ex. 3).  Tom Nolan performed that task on February

25, 2013.  (Tr. at 156; Plaintiff's Ex. 3).

Pursuant to Stoops' unwritten data retention policy, once a terminated employee's

passwords and voicemail are deactivated, information stored on the company servers

remains for at least another 30 days.  (Tr. at 113).  Before permanently deleting a

terminated employee's user accounts, the IT Department would contact the terminated

employee's supervisor for his or her approval.  (*Id.* at 149).  If approval was given, the IT

---

[2] Stoops used the IT Department of Stoops Freightliner.  (Filing No. 61-16 at 27).  The IT Department assisted Stoops employees with various computer issues, and determined whether it was necessary to replace computer equipment and/or update computer software.  (*Id.* at 33).

Department would delete the user account from the active directory, which would then delete the employee's work data from the operating system. (*Id.*). The terminated employee's mailbox was also deleted. (*Id.* at 115).

At the hearing, Trauner testified that she had two conversations with the IT Department regarding Plaintiff's computer information. (Tr. at 71). The first occurred shortly after Plaintiff's termination. (*Id*. at 35, 70). Trauner asked the IT Department to preserve all of Plaintiff's computer data and, according to Trauner, "they said they would." (*Id.* at 70). The second conversation occurred "probably after this litigation began." (*Id.* at 70-71). She asked the IT Department to provide her with Plaintiff's e-mails and work documents, "but they were unable to" because they had been deleted. (*Id.* at 71). Trauner's 30(b)(6) testimony on this subject does not explicitly verify that Trauner contacted the IT Department twice. Her testimony suggested she contacted the department "after all of this started" which she clarified as "[a]fter this lawsuit was filed." (Filing No. 61-16 at 29). When confronted with this testimony at the hearing, Trauner explained, "I think I was still confused as to whether it was after the complaint in Federal Court or after the complaint at the EEOC." (Tr. at 39). IT Department employees Marcus Prow, Tom Nolan, and Tom Nelson do not recall ever receiving a telephone call from Trauner requesting a litigation hold (i.e., an instruction to preserve documents) following Plaintiff's termination. (*Id*. at 106-07, 140, 145, 157, 160). In addition, the parties stipulated that Service Manager James Jarvis, Service Manager Kelly Stocking, and Assistant Office Manager Linda Robinson did not receive written or verbal notice of a litigation hold regarding Plaintiff's computer information. (*Id*. at 4). And there is no

evidence of a ticket generated by the IT Department regarding such a request.  (*Id*. at 113, 159, 160).

Trauner testified Prow came to Stoops to update the computers soon after Plaintiff's termination, but she does not know if he replaced Plaintiff's computer or not. (*Id*. at 47, 48; s*ee also* Filing No. 61-16 at 28-29).  At any rate, it is undisputed that Plaintiff's mailbox containing her work e-mail has been permanently deleted.

Neither Prow, Nelson, nor Nolan remember receiving a request from Trauner or anyone associated with Stoops to delete Plaintiff's e-mail and data files.  (Tr. at 129, 147, 165).

### C.    Trauner's Emails with Lisa Goodin

Lisa Goodin is a former employee of Andy Mohr Ford who applied for and ultimately obtained Plaintiff's position as payroll clerk.  She testified that, before she e-mailed her resume to Trauner on January 27, 2013, she talked to Trauner on the telephone the Friday before (January 25th).  (*Id*. at 7; *see also* Filing No. 55-31 at 8-9; Plaintiff's Ex. 14 at 1).  Goodin also testified that she and Trauner e-mailed one another approximately two or three times about potential employment.  (Tr. at 7).  Goodin's cover letter states, "Debbie, Thank you for your interest in speaking with me.  In your e-mail you mentioned . . . ."  (Filing No. 55-13; Plaintiff's Ex. 14 at 2).  Goodin could not remember whether a cover letter was attached to her January 27 e-mail.  (Tr. at 2) ("I would think professionally I would [attach a cover letter with her resume], but I cannot say for 100 percent.").

Trauner testified, consistent with her deposition testimony, that Goodin voluntarily sent Trauner an e-mail "out of the blue" for the first time on January 27, 2013.  (*Id*. at 58; Filing No. 61-14 at 118).  This e-mail did not contain a cover letter; Trauner believes the cover letter came a few days later in the regular mail.  (Tr. at 55-56).  At any rate, Trauner sent Goodin an e-mail *in response to* Goodin's January 27 e-mail.  (*Id*. at 56; Filing No. 61-14 at 118, 128).  This e-mail was not disclosed during discovery.  At the hearing, Trauner explained she could not locate the sent e-mail because she likely deleted it.  (Tr. at 56).  Trauner deleted her sent e-mail as a matter of course "whenever [her] computer would tell [her] that [she] can't send e-mails anymore."  (Tr. at 75; *see also id.* at 56 ("I delete the sent items because of space on the system . . . .")).

## D.      Stoops' Responses to Plaintiff's Discovery Requests

Plaintiff's Interrogatory No. 9 to Trauner stated:

> If you have deleted, erased, or altered information contained on any computer, cellular, or other electronic device, or destroyed hard copies of any documents, including but not limited to business records, emails, voicemails, social media content, text messages, journal entries, or other content which refer, related to, or comprise a record of any allegation, claim or defense asserted in this lawsuit, identify what information you deleted, erased, altered, or destroyed, and the date(s) you deleted, erased, altered, or destroyed the information or document(s).

(Filing No. 61-7 at 7).  Trauner answered:  "Trauner states that she is not aware of any responsive information or documents that have been discarded, deleted, destroyed or otherwise lost."  (*Id*.).

Plaintiff's Interrogatory No. 9 to Stoops stated:

> State the exact date you or any person acting on your behalf first communicated or corresponded with Lisa Goodin about her potential future

7

employment with the company, and identify the person with whom Lisa Goodin first communicated or corresponded.

(Filing No. 61-8 at 9). Stoops responded:[3] "January 27, 2013 regarding the possibility of employment.  See also the documents produced by Stoops Buick in Response to Plaintiff's First Request for Production of Documents . . . ."  (Filing No. 61-7 at 8).

Plaintiff's Interrogatory No. 24 to Stoops provided:

Identify each document responsive to Plaintiff's First Request for Production that you did not produce, and, for each document, state the reason for your failure to produce such a document.

(Filing No. 61-8 at 19).  Stoops responded:  "Stoops states that it has produced all documents in its possession that are responsive to Plaintiff's First Request for Production of Documents.  To the extent any such documents are found, Stoops will produce a privilege log." (*Id.*).

In Plaintiff's Request for Production No. 16, Plaintiff requested a copy of the email referenced in Goodin's cover letter.  Defendants responded: "Stoops is not in possession of any responsive documents."  (Filing No. 61-9 at 7).

### E.     Mr. Kenworthy's Testimony

Rhys Kenworthy, the owner of Root Computing, testified as Plaintiff's expert witness on Microsoft Outlook and Microsoft Exchange protocols.  Merely disabling Plaintiff's user ID and e-mail account would result in a "soft delete," he explained, but

---

[3] Stoops directed Plaintiff to "[s]ee the Answer to Interrogatory No. 11 to Trauner's Answers to Plaintiff's First Set of Interrogatories dated October 13, 2014."  The answer to Interrogatory No. 11 is set forth above.

the e-mails would remain on the exchange server and Stoops' storage medium; thus, to disable Plaintiff's active user account took affirmative action by Stoops.  (Plaintiff's Ex. 20, Kenworthy Expert Report ¶ 7) ("To have permanently deleted all versions of Plaintiff's mailbox items, it would have taken deliberate and direct action to first locate all versions of those items, then purposefully delete all copies from all mediums.").  He testified, however, that he did not find any evidence that Stoops destroyed Plaintiff's e-mails and computer files to hide adverse information; in other words, he did not find any evidence of bad faith.  (Tr. at 110).

All other evidence necessary to a determination of this motion will be addressed in the Discussion Section.

## II.    Discussion

"Spoliation of evidence occurs when one party destroys evidence relevant to an issue in a case."  *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002) (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001)).  The court's determination of whether spoliation occurred requires a two-part inquiry.  *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-205-WTL-MJD, 2015 WL 2371597, at *11 (S.D. Ind. May 18, 2015).  First, the court must determine whether the defendant was under a duty to preserve evidence; second, it must determine whether the defendant destroyed evidence in bad faith.  *Norman-Nunnery v. Madison Area Tech. Coll*, 625 F.3d 422, 429 (7th Cir. 2010); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).

### A. Duty to Preserve

A defendant has a duty to preserve evidence where it "knew, or should have known, that litigation was imminent." *Trask-Morton*, 534 F.3d at 681. The scope of the duty to preserve is broad, and includes evidence the defendant should have reasonably foreseen would be relevant to a potential claim or action. *Domanus v. Lewicki*, 284 F.R.D. 379, 386 (N.D. Ill. 2012). The duty attaches when the plaintiff informs the defendant of his or her potential claim. *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C 1768, 2014 WL 3497697, at *4 (N.D. Ill. July 14, 2014); *see also Trask-Morton*, 534 F.3d at 681 (finding the duty to preserve attached when Motel 6 received a demand letter from plaintiff's attorney). Here, the duty attached, at the latest, when Defendants received notice of Plaintiff's Charge on March 7, 2013.

Although Trauner testified to placing a litigation hold on Plaintiff's work e-mails, there is no evidence in the record to support her statement. There is no evidence of a ticket generated by the IT department regarding the request, and neither Prow, Nolan, Nelson, Jarvis, Stocking, nor Robinson could verify such a request. The court therefore finds Defendants breached their duty to preserve evidence.

### B. Bad Faith

"'An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case.'" *Norman-Nunnery*, 625 F.3d at 428 (quoting *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002)). In order to draw an inference that the missing document, if produced, would have contained information

adverse to the defendant/employer, the plaintiff must demonstrate that the defendant intentionally destroyed the documents in bad faith. *Id*. Evidence is considered to be destroyed in bad faith "if it is destroyed for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *see also Partington v. Broyhill Furniture*, 999 F.2d 269, 272 (7th Cir. 1993) ("But if, being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence."). According to Plaintiff, Defendants engaged in bad faith because they deliberately misled Plaintiff during discovery; provided false answers under oath; failed to timely supplement interrogatory answers and responses to requests for production; unjustifiably failed to disclose the existence of e-mails; and purposely withheld disclosing that material evidence was destroyed until after the close of discovery.

With regard to Interrogatory No. 9 to Trauner, which asked whether she had "deleted, erased, or altered information contained on any computer . . ," Trauner replied that she was "not aware of any responsive information or documents that have been discarded, deleted, destroyed, or otherwise lost." Trauner's testimony is technically correct; *she* did not delete any information of Plaintiff's from Plaintiff's work computer. And although Trauner was aware of the fact that Plaintiff's e-mails were deleted, there is no evidence in the record to support an inference that she, or any other managerial employee of Stoops, directed the IT department to delete Plaintiff's computer data. In short, Trauner's Interrogatory No. 9 Response was not answered in bad faith.

11

With regard to Interrogatory No. 9 to Stoops, Trauner's testimony has been consistent that her first communication with Goodin occurred when she received Goodin's resume on January 27, 2013.  Goodin remembers a conversation with Trauner the Friday before, but Trauner does not.  Trauner believes she heard about Goodin from Barbara Winegar, a Stoops' employee who formerly worked at Andy Mohr Ford.  This conflicting testimony is insufficient to show that Trauner answered Interrogatory No. 9 in bad faith.  The alleged conversation occurred three years ago, and, as is evident from their testimony, memories fade.

With regard to Interrogatory No. 24, Stoops represented that it had "produced all documents in its possession that are responsive to Plaintiff's First Request for Production of Documents."  At the hearing, Plaintiff argued that Stoops did not identify Goodin's e-mail to Trauner as one of those documents in response to Plaintiff's First Request for Production of Documents, which sought "[c]opies of any and all communications between you and the individual you hired to replace Plaintiff's position."  (Plaintiff's Ex. 19, Request No. 34).  From that premise, Plaintiff maintains that Stoops deliberately withheld Trauner's e-mail(s) to Goodin.

As an initial matter, Stoops' answer was technically correct; it did produce those documents responsive to Plaintiff's First Request for Production of Documents that were *in its possession*.  Moreover, Trauner testified that she routinely deleted sent e-mail to make room on the company server.  Trauner's testimony was credible.  There is no evidence to suggest that Stoops, by Trauner, purposefully deleted Trauner's e-mails to Goodin which occurred on or around January 27, 2013.  For this reason, with regard to

Defendants' response to Plaintiff's Request for Production No. 16 seeking a copy of the e-mail referenced in Goodin's cover letter, Stoops supplied a truthful response: "Stoops is not in possession of any responsive documents." (Plaintiff's Ex. 19 at 7).

Lastly, and most significantly, Plaintiff's own expert admitted that, after hearing all of the evidence, Stoops did not destroy evidence in bad faith. (Tr. at 110 ("Q: But you did not – it's your opinion, based upon your background and experience, that what you've seen and heard and read and that's been provided to you, that you do not find bad faith here?  A: Right.  Correct.").  Plaintiff, therefore, has failed to establish the required element of bad faith.

## III.    Conclusion

The court finds Plaintiff did not carry her burden of proving that Stoops deliberately destroyed evidence in bad faith.  Accordingly, the court **DENIES** Plaintiff's Motion for Sanctions Against Defendants for the Spoliation of Evidence (Filing No. 61).


**SO ORDERED** this 25th day of April 2016.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.